UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>KEANDRE GLASPIE,<br><br>        Defendant. | Case No. 25-cr-20461<br><br>Honorable Robert J. White |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO PARTIALLY DISMISS THE INDICTMENT**

I.    Introduction

Keandre Glaspie is charged with, among other things, being a felon in possession of a firearm and unlawfully possessing a machinegun.

Before the Court is Glaspie's motion to dismiss those charges. (ECF No. 23). The Government responded in opposition. (ECF No. 30).  Glaspie did not file a reply. The Court held a hearing on the motion on February 6, 2026. (Minute Entry, Feb. 6, 2026).  For the following reasons, the motion is denied.

II.    Background

At approximately 9:15 a.m., on May 14, 2025, an unidentified person entered the Jackson Police Department lobby. (ECF No. 1, PageID.4, ¶ 10).  The person told

officers that a man wearing a mask had walked into a party store and "said something to the effect of there's going to be shots fired." (*Id.*). The informant saw the masked man enter a "grey Kia" afterwards, which remained parked outside the party store. (*Id.*).

When officers arrived at the scene, they observed a car matching the informant's description. (*Id.*, PageID.4, ¶ 11). The vehicle drove away as the officers approached it on foot. (*Id.*). After a brief pursuit, the officers stopped the vehicle and arrested the driver, who they later identified as Glaspie. (*Id.*, PageID.5, ¶ 11). The officers impounded the vehicle and searched it. (*Id.*, PageID.5, ¶ 12). They recovered a Glock model 27, .40 caliber pistol with an attached machinegun conversion device, also known as a "switch." (*Id.*). The gun was loaded with a single round in the chamber. (*Id.*). The officers also discovered what they suspected to be heroin and cocaine, secreted in a bag. (ECF No. 30, PageID.119-20).

A specialist with the Bureau of Alcohol, Tobacco, Firearms and Explosives confirmed that Glaspie is not licensed to possess, manufacture, or sell switches or firearms with an attached switch. (ECF No. 1, PageID.7, ¶ 14).

A federal grand jury indicted Glaspie on charges of possessing a controlled substance with intent to distribute (18 U.S.C. § 841(b)(1)(C)), being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)), and unlawfully possessing a machinegun (18 U.S.C. § 922(o)). (ECF No. 12, PageID.24-25). Glaspie now moves

2

to dismiss the firearms-related charges on the ground that they violate the Second Amendment to the United States Constitution. (ECF No. 23).

III.   Analysis

A.   *Second Amendment Overview*

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570, 579-81, 592 (2008), the United States Supreme Court ruled that the Second Amendment "codified a pre-existing individual right." *United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024) (quotation omitted).  "This right protects the ability to keep, for lawful purposes, the kinds of weapons in common usage, like those used for self-defense." *Id.* (quotation omitted).  What *Heller* left unresolved is how courts should evaluate whether a particular firearm regulation violates the amendment.

The Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) filled that gap.  In *Bruen*, the Court the placed the burden on the government to "show that a regulation's infringement on a particular citizen's Second Amendment right" is "consistent with this Nation's historical tradition of firearm regulation." *Williams*, 113 F.4th at 644 (quotation omitted).  Current firearm regulations need not perfectly align with a Founding-era "statutory analogue" to

3

retain their constitutional validity. *Id.* at 645 n.2; *see also United States v. Rahimi*, 602 U.S. 680, 691-92 (2024).  Rather, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692.

*Bruen* calls for a two-step analysis to determine a firearm regulation's constitutionality. *Williams*, 113 F.4th at 648.  Step one is text-based.  Courts must ask whether "the Second Amendment's plain text" encompasses the charged conduct. *Bruen*, 597 U.S. at 24; *see also Williams*, 113 F.4th at 648.  If it does, then "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24.

Step two – a historical-based inquiry – kicks in afterwards.  At this stage, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Williams*, 113 F.4th at 648 (quotation omitted).  Courts ask "whether the modern regulation is relevantly similar to laws that our tradition has historically embraced." *Id.* (quotation omitted).  They must inquire into "how and why [historical] regulations burden a law-abiding citizen's right to armed self-defense" and "determine whether the challenged regulation is comparably justified." *Id.* (quotation omitted).

B.      *Bruen Step One – The Textual Analysis*

As an "American citizen," Glaspie is a "member of the people" asserting "the right to possess a gun," *i.e.*, the right to "keep and bear arms." *Id.* at 649 (quotation

4

omitted).  On the other hand, the felon-in-possession statute, 18 U.S.C. § 922(g)(1), prohibits anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm."  And 18 U.S.C. § 922(o) categorically forbids the possession of a machinegun – "undoubtedly an 'Arm' that one can 'keep and bear.'" *United States v. Bridges*, 150 F.4th 517, 524 (6th Cir. 2025) (quoting U.S. Const. amend. II) (cleaned up).  So both statutes criminalize Glaspie's alleged conduct, which is otherwise protected under the Second Amendment's plain text. *See Williams*, 113 F.4th at 649-50; *see also Bridges*, 150 F.4th at 524 (holding that "the Second Amendment's plain text covers Bridges's possession of a machinegun").

C.      *Bruen Step Two – The Historical Analysis*

1.      Facial Challenge to 18 U.S.C. §§ 922(g)(1) and (o)

Turning to *Bruen*'s second step, insofar as Glaspie contends that the indictment's firearms-related charges are facially unconstitutional he must demonstrate that there is "no set of circumstances under which [either charge] would be valid." *Williams*, 113 F.4th at 657 (quotation omitted); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987).

In *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), the United States Court of Appeals for the Sixth Circuit expressly rejected this type of challenge to the felon-in-possession statute.  There, the court of appeals concluded that "our nation's

history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* at 657.  And because the felon-in-possession statute advances this same fundamental interest, the Sixth Circuit held that "the provision is not susceptible to a facial challenge." *Id.*

The Sixth Circuit reached a similar conclusion regarding the unlawful-possession-of-a-machinegun statute.  In *United States v. Bridges*, 150 F.4th 517 (6th Cir. 2025), the court of appeals found that the statute "is consistent with the Nation's historical tradition of firearm regulation" because machineguns "are both dangerous and unusual" and "not weapons typically possessed by lawabiding citizens for lawful purposes." *Id.* at 528.  As a result, the defendant's facial challenge to the statute's constitutionality lacked merit. *See id.* at 529.

Consistent with *Williams* and *Bridges*, Glaspie's facial challenge to both the felon-in-possession and the unlawful-possession-of-a-machinegun statutes are equally foreclosed.

2.     As-Applied Challenge to 18 U.S.C. § 922(g)(1)

Next, Glaspie argues that the felon-in-possession statute violates the Second Amendment as the statute applies to him specifically.  In this setting, Glaspie carries the burden of showing that "he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope." *Williams*, 113 F.4th at 657.  Dangerousness hinges upon "a defendant's entire criminal record – not just the

specific felony underlying his § 922(g)(1) conviction." *Id.* at 659-660.  "Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information – such as prior convictions – when assessing a defendant's dangerousness." *Id.* at 660.

The Sixth Circuit views "certain categories of past convictions [as] highly probative of dangerousness, while others are less so." *Id.* at 658.  The first category concerns violent crimes against people. *Id.*  This class of criminal conduct raises "at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.*  Such crimes include "murder, rape, assault, and robbery." *Id.*

The second category, "while not strictly crimes against the person . . . pose a significant threat of danger" to people. *Id.* at 659.  The Sixth Circuit listed examples of crimes such as drug trafficking and burglary, *i.e.*, "crimes [that] put someone's safety at risk, and thus, justify a finding of danger." *Id.*

The third category includes crimes that "cause no physical harm to another person or the community." *Id.*  While the Sixth Circuit found this type of criminality "the most challenging to address," it anticipated that federal courts will usually "have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*  Nonetheless, the Sixth Circuit stressed that, ultimately, "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 660.

7

Applying these principles here, Glaspie's past convictions demonstrate that he is a "dangerous felon." *Id.* at 662.  In March 2025, he pleaded guilty to two counts of manufacturing and delivering controlled substances (cocaine, heroin, or another narcotic) stemming from two separate incidents. (ECF No. 30-1, PageID.136-37). On one of those occasions, police apprehended Glaspie with an unlawfully concealed weapon. (*Id.*, PageID.137).  These offenses, which are closely akin to drug trafficking, are "serious" crimes that pose a significant "danger to the community." *Williams*, 113 F.4th at 659.  And they "often lead[ ] to violence," which explains why Glaspie most likely felt the need to carry a concealed weapon. *Id.*

What is more, Glaspie's juvenile criminal record is replete with convictions for larceny from a person, carrying concealed weapons, assaulting and resisting police officers, and domestic violence – all of which raise "at least strong evidence" that Glaspie is dangerous, "if not totally dispositive on the question."[1] *Id.* at 658; *see also United States v. Davis*, No. 25-5356, 2026 U.S. App. LEXIS 458, at *6 (6th Cir. Jan. 7, 2026) (considering the defendant's "multiple violent crimes as a juvenile" when assessing his dangerousness).

---

[1] Glaspie's state drug trafficking convictions, coupled with the concealed weapon offense, are serious enough and dangerous enough to foreclose him from lawfully possessing a firearm even without looking to his juvenile criminal record. *See Williams*, 113 F.4th at 659.

8

Because his prior criminal convictions establish that Glaspie is dangerous, the as-applied challenge to the felon-in-possession statute cannot succeed.

### 3. As-Applied Challenge to 18 U.S.C. § 922(o)

Glaspie's as-applied challenge to the unlawful-possession-of-a-machinegun statute is more straightforward. In *Bridges*, the Sixth Circuit rebuffed an as-applied Second Amendment challenge to this provision where the defendant possessed "a loaded Glock 23 .40-caliber handgun with an attached 'switch.'" *Id.* at 519. The defendant "did not have a valid registration for the machinegun." *Id.* Nor did he "contest that the converted pistol" qualified as a machinegun under federal law. *Id.*

These factors are present in this case as well. Glaspie possessed a comparable model handgun – a Glock model 27, .40-caliber pistol (ECF No. 12, PageID.25); the gun was equipped with a switch (*id.*); Glaspie does not maintain that he possessed a valid registration for the firearm (ECF No. 23, PageID.74-75); and he does not dispute that the converted handgun qualifies as a machinegun under federal law. (*Id.*).

Since the underlying facts neatly track those in *Bridges*, the same analysis governs and the same result is warranted: Glaspie cannot prevail on his Second Amendment as-applied challenge to the unlawful-possession-of-a-machinegun statute. Accordingly,

IT IS ORDERED that Glaspie's motion to partially dismiss the indictment (ECF No. 23) is denied.

Dated: February 10, 2026                s/ Robert J. White
                                          Robert J. White
                                          United States District Judge